# CIRCUIT COURT OF BALTIMORE CITY.

Filed October 13, 1916.

J. HOWARD BENNETT
VS.
ETHEL D. BAMBERGER, ET AL.

*Charles Lee Merriken* and *William Edgar Byrd* for plaintiff.
*Howard Bryant* and *Edwin T. Dickerson* for Ethel D. Bamberger.
*P. August Grill* for G. Horton Gaffney and wife.

DAWKINS, J.—

On or about the 26th day of April, 1916, the plaintiff owned a moving picture parlor at 115 North Howard street, Baltimore. He had previously to that date employed the first named defendant to secure a purchaser of the said parlor, for the obtaining of which purchaser the said plaintiff was to pay 10 per cent commission. The said defendant Bamberger negotiated a sale to the defendants Gaffney for the price of $8,000, $4,000 to be paid in cash

462

($2,000 of which was to be loaned by Bamberger to the Gaffneys and to be secured by mortgage) and the remaining $4,000 to be paid at the end of one year from the date of sale, contingent upon the success made by the Gaffneys in said business.

The plaintiff claims that the $2,000 to be secured was never paid to him nor was the mortgage given by the Gaffneys ever assigned to him as promised, although it was executed by the Gaffneys. The defendant, Bamberger, claims, on the other hand, that the money ($2,000) was paid over to the plaintiff at the time the transaction was closed.

The bill was filed for the purpose of restraining the defendant Bamberger from disposing of the mortgage or taking any steps to collect it, and the defendants Gaffney from making further payments on account of the mortgage debt to the said Bamberger.

The bill further seeks to have the sum of $550 already paid to Mrs. Bamberger on account of the mortgage, paid over to the plaintiff, and further, to compel the mortgage to be assigned to him. By agreement, the motion to dissolve, as well as the whole case, was heard at the same time. The fundamental question to be determined is whether or not Mrs. Bamberger paid over to Mr. Bennett for the Gaffneys the sum of $2,000 in cash on the 26th of April, 1916.

This is an unusual situation. One not without difficulty. On the one essential issue there is an absolute contradiction. With all the irreconcilable statements met with in the presentation of testimony in the trial of cases in the courts, I have rarely seen a case in which persons, who, so far as the evidence discloses, are of veracity unimpeached, have made more positive diametrically opposite statements about a physical fact as to the happening or not happening of which there could be no doubt than appears in this case. So whatever conclusion may be reached there may be a mistake made. Certainly there can be no doubt as to someone making incorrect statements. Reliance must be had upon the testimony of those who apparently have no interest in the result of this suit, hoping, as was said in another recent case, that what is covered shall some day "be revealed" and become known; so that "whatsoever ye have spoken in darkness shall be heard in the light," and in due time "be proclaimed from the housetops."

It would seem not inadvisable, without going over with any great detail, to point out a few phases of the testimony and improbabilities in the statements made by the parties.

The defendant Mrs. Bamberger claims that she had the money in question in her safe, because she feared that a person who sued her might give her some trouble. She carried the money, the denominations of which were remembered, to the office of Mr. Dickerson, where the transaction was to be closed, and then, while the settlement was in progress, stood up and counted it while standing and handed over the $2,000 to the plaintiff in the presence of the six or more people there assembled. The money is alleged to have been counted in the presence of all of the people. The mortgage was not executed until the transaction was closed and in another building. There is no denial of the statement that the money was said to be raised from the hypothecation of bonds, yet it was testified that it was gotten from the sale of a moving picture place. Mr. Bamberger and Mrs. Bamberger traced the money in different places. Wherever this money came from or where it was deposited could have been shown with precision and definiteness. If derived from the sale or from a bank withdrawal, proof of the source could have been produced.

As to the passing of the money, there is no sort of corroboration of the defendants Bamberger's explanation, except Mr. Dickerson's rather hazy recollections that he saw some money passed by Mrs. Bamberger. He does not pretend to know the amount or anything very definite about it. It would not seem reasonable to suppose that the money could have been passed in this way without attracting the attention of all present. The process of counting could hardly have been unobserved. It might be presumed that these people were not accustomed to observe large sums of money passed.

Mr. Dickerson examined the check for $1,750 that was passed to the plaintiff, as was the usual and proper thing to do, as it would have been the most natural and usual thing when a lawyer

is settling a transfer of money like this, is for him to count any money or other consideration passing between parties, make adjustments, etc.

It would seem reasonable, too, if the plaintiff received as much as $2,000 in cash besides the check for $1,750, that Mrs. Bamberger would have retained out of the funds so received her commission of $400 or $800, whichever sum she was entitled to receive, and counsel would have received his fee out of the money passing to the plaintiff, his then client.

It is unsatisfactory that the only bit of corroborating testimony of the defendant Bamberger is that of the counsel for the plaintiff, who was representing him in this settlement, but who has subsequently filed an answer for the defendants in this case, and occupied a place at the trial table at the hearing as associate counsel for the defendants. Whilst the Court has the highest regard for him, it is an unfortunate situation and one which would have been better not to have been allowed to arise. The situation compels the testimony to come as from one with any interest, notwithstanding the fact that reason for the position occupied by counsel has been fully and frankly explained as due to the actions of the plaintiff in regard to the payment of some rent due.

The position of the plaintiff is also not without difficulty. It is the duty of the plaintiff to prove his case. A duly written paper (mortgage) is payable to another. Why did he quietly sit by, give a receipt for $4,000 when he had only received $2,000? If he was in a straitened financial condition, why did he leave before he got his money? Why did he allow the mortgage to remain on record for four months without saying a word to the defendant about transferring it and paying the payments made on it of $50 per week to him? If his contention be true, why did he not demand the money collected after it had exceeded $400, the amount he said he owed for commissions? Why was the question or mortgage or money not mentioned with more definiteness? Why avoid discussing the commissions? Why should he sit by when represented by counsel and have a mortgage made payable to another? Why wasn't something said about commissions, or why were they not deducted at the meeting? Why, if this matter was open, did the plaintiff not go to Bamberger's office all those weeks? Why did he not make some effort to have the mortgage assigned to him?

There are many other inaccuracies and inconsistencies on both sides, but as this is purely a question of fact, all other times of paying over the money are precluded save the time named by the defendant Mrs. Bamberger, to wit, in the office in the presence of the company of parties heretofore indicated. Mr. and Mrs. Gaffney and Mr. Doetzer say there was no money passed at that time. They were close to all parties. They have no interest in the suit. The Gaffneys will have to pay the money due on the mortgage to somebody.

The one question to be determined is, as has been stated, was the $2,000 paid over to the plaintiff in Mr. Dickerson's office on April 26, 1916? As I feel that I should be controlled in answering this question by the weight of the evidence, it would seem useless to further discuss the testimony.

There is a woeful forgetfulness on the part of some of the parties concerned, so I feel constrained to rely upon the statements of those apparently disinterested. If the testimony of the last named witnesses be accepted, as I feel that it should be, the plaintiff has made out his case, and my answer to the question must be no. So the relief sought in the bill will be granted.